## MOORE v. SIMPSON.

(Supreme Court, Appellate Division, First Department.   December 20, 1907.)

BROKERS—ACTION FOR COMPENSATION—EVIDENCE—SUFFICIENCY.

In an action by a broker to recover a balance of commissions due him, evidence *held* sufficient to show that he had been paid in full.

Patterson, P. J., dissenting.

Appeal from Trial Term.

Action by Ernest C. Moore against Clarence D. Simpson. From a judgment in favor of plaintiff, and from an order denying motion for a new trial, defendant appeals. Judgment and order reversed, and new trial granted.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Edward J. Patterson (Benjamin S. Harmon and Charles P. Mathewson, on the brief), for appellant.

Thomas F. Conway, for respondent.

LAUGHLIN, J.   This is an action by a broker to recover an alleged balance of commissions earned on the sale of 23,168 shares of the capital stock of the New York & Queens County Railway Company under an employment by the defendant and one Shelmerdine. The amount of commissions agreed to be paid to the plaintiff by the defendant and Shelmerdine was $20,000.   It is alleged in the complaint that, after the commissions were earned, plaintiff was paid, by direction of the defendant, $10,000 on account thereof, and that, upon the agreement of one Brady, the duly authorized attorney in fact for the defendant, that the defendant would pay the balance of $10,000 owing to the plaintiff, he released Schelmerdine from liability. The stock was not owned jointly by the defendant and Shelmerdine. The defendant owned 8,034 shares and Shelmerdine owned 15,134 shares. By a letter under date of July 21, 1903, the defendant and Shelmerdine jointly, however, promised to pay to the plaintiff the sum of $20,000 for his services in effecting the sale, in the event that an offer which they had made to one Giles to sell their stock should be accepted and consummated.   The offer was accepted, and the sale was consummated; and it is conceded that plaintiff became entitled under the contract to receive from the defendant and Shelmerdine the sum of $20,000.   Giles was also a broker, and he was acting for the brokerage firm of Ford, Bacon & Davis, who represented a syndicate of purchasers.   The firm of Ford, Bacon & Davis, through Giles, on the 20th day of July, 1903, as an inducement to the defendant to persuade Shelmerdine to sell his stock at $75 per share, agreed to pay the defendant a commission of $20,000, provided he was successful in procuring Shelmerdine's stock for them at the rate of $75 per share. This arrangement the defendant concealed from Shelmerdine, and not only induced Shelmerdine to sell his stock at $75 per share, but obtained from him an agreement to pay the entire expense to them of selling their stock, which meant the payment of plaintiff's commis-

sions. The firm of Ford, Bacon & Davis originally agreed to pay Giles a commission of $1 per share for negotiating the purchase of this stock, but this agreement was subsequently modified by mutual consent, and Giles agreed to accept from the firm in full for his services the sum of $13,284, to be paid one-half in cash and one-half in two notes of $3,321 each. In the meantime, before the change in the agreement for compensation between Giles and the firm of brokers who employed him, he and the plaintiff had agreed to divide equally the commissions received by them. The defendant was required to be absent at the time of consummating the sale; and, in order that plaintiff might receive his commissions promptly, it was agreed that Giles should pay the $20,000 to be received from the firm for the defendant to the plaintiff. Evidence was given on behalf of the defendant, which is scarcely denied by the plaintiff, that this was to be concealed from Shelmerdine, and that the plaintiff was to assist the defendant in subsequently obtaining reimbursement from Shelmerdine. At the time the sale was consummated Giles received from the firm of Ford, Bacon & Davis $20,000 in cash for the defendant and a check for $12,642, being the amount of his commissions, less the discount on the notes which were delivered in part payment, and thereupon discounted by the firm for him. Giles thereupon paid to the plaintiff the sum of $16,321, being one-half of the $20,000 received on account of the defendant, which he was authorized to apply in payment of plaintiff's commissions, and one-half of which he retained for himself under his agreement with the plaintiff for a division of the commissions, and one-half of the commissions received for his own services. Giles did not testify. It appears that defendant made some effort to procure his attendance as a witness, but there is no evidence that plaintiff attempted to subpœna him. The plaintiff as a witness in his own behalf repeatedly admitted that he received one half the amount received by Giles from the firm of brokers, and that he understood that Giles retained by virtue of the agreement between them the other half; but he also gave testimony conflicting with this, to the effect that Giles represented to him that the firm cut down the defendant's commissions to one-half, and that only $10,000 was received by Giles for the defendant. There is no evidence to corroborate his statement that he was informed by Giles that defendant's commissions had been cut; and it now appears as an uncontroverted fact that they were not. He, however, admitted that the division of the commissions between himself and Giles was a full settlement as between them on the basis of their agreement, and he also specifically admitted that he understood that $10,000 of the amount he received was on account of the liability of the defendant and Shelmerdine to him. In view of his arrangement with Giles for a division of commissions, he was only entitled to receive $10,000 of the amount received by Giles for the defendant, and, if this part of his testimony were true, it would indicate that he still owed Giles on account of the commissions $10,000, and that any recovery herein should inure to the benefit of Giles.

The plaintiff attempts to explain his admissions upon the theory that he understood that Giles was to receive $1 per share for his serv-

ices in purchasing the stock, and that he was not aware of the change of the agreement with respect to this compensation, and supposed that all that he received over $5,000, which would be one-half of the $10,-000 paid on account of defendant, was his one-half of Giles' commissions; but the figures do not corroborate this theory. He further contends that the alleged change in the agreement for Giles' commissions occurred after they had been earned, and that it is improbable that Giles would then have agreed to such a reduction, or that it was a collusive arrangement made to deprive him of receiving one-half of the full amount of Giles' commissions according to the original contract. The evidence leaves the modification of the agreement as to Giles' commissions uncontroverted, and it must be regarded as establishing the modification. It does not appear that the firm of Ford, Bacon & Davis had any knowledge that the plaintiff was interested in the commissions to be paid to Giles at the time the agreement therefor was modified. Whether plaintiff understood at the time that all of the commissions due to him and Giles were paid is quite immaterial; for it now appears that they were, and he has been paid in full, and therefore was not entitled to recover.

There is no force in the contention that he is entitled to recover upon a subsequent agreement made by Brady in behalf of the defendant to pay him $10,000. That agreement, if made, was made upon the erroneous understanding based on plaintiff's assertion that the defendant's commissions had been reduced one-half by the firm of Ford, Bacon & Davis, and that the latter firm had not paid the entire amount of $20,000 to Giles. It appears that the plaintiff, shortly after the consummation of the sale, asserted to Brady as the attorney in fact for the defendant and to Shelmerdine that he had only received one-half of his commissions, and that he claimed the balance of $10,000 under his contract, and that subsequently Shelmerdine gave a check to the order of the defendant, which was deposited to the credit of his account, and collected for the full $20,000 under the agreement by which Shelmerdine was to pay the commissions, or, rather, the entire cost of effecting the sale of the stocks owned by himself and by the defendant; and that this he refused to do until the plaintiff executed to him a release of any liability on account of the commissions. It is not, of course, claimed by the plaintiff that at that time he was still entitled to $20,000. In thus aiding the defendant in obtaining reimbursement for the commissions already paid, the plaintiff was merely discharging his obligation to the defendant. Assuming the testimony of the plaintiff to be true that Brady, representing the defendant at that time, agreed to pay him the balance of $10,000 which he claimed, and assuming also that Brady was authorized to represent the defendant in that behalf, which is not at all clear, it is evident that there was no consideration for the agreement, because every obligation of the defendant to the plaintiff had at that time been discharged. The plaintiff assented to the arrangement by which he was to receive his commissions through Giles, who received on account of the defendant $20,000, to which the plaintiff would have been entitled had it not been for his arrangement to divide his commissions with Giles, and which doubtless but for that arrangement Giles would have voluntarily turned over to him.

He acquiesced, without objection, in Giles retaining one-half of this amount on account of their contract for the division of their commissions which he recognized and thereby performed. He therefore had no further claim upon the defendant. If the defendant had sued Giles for the $10,000 which the latter thus retained by consent of the plaintiff and applied on the contract for a division of the commissions, Giles could have successfully defended upon the ground that he had, in effect, paid it to plaintiff as authorized by defendant.

It follows that the judgment and order should, therefore, be reversed, and a new trial granted, with costs to appellant to abide the event. All concur, except PATTERSON, P. J., who dissents.